**UNITED STATES v. GILL.**
No. 10747.

United States Court of Appeals
Seventh Circuit.

May 8, 1953.

Rehearing Denied June 17, 1953.

ment alleged that by committing these three assaults the defendant violated sections 113(c), (d) and (b), respectively, of Title 18 of the United States Code. The indictment alleged that the three assaults occurred on a vessel registered under the laws of the United States while the vessel was on a voyage from Chicago, Illinois, to Michigan City, Indiana, upon the waters of Lake Michigan.

The applicable provisions of section 113 of Title 18, United States Code, provide as follows:

> "Whoever, within the special maritime and territorial jurisdiction of the United States [this term expressly includes any vessel registered under the laws of the United States while on a voyage on the waters of any of the Great Lakes, Sec. 7(2) Title 18, U.S. Code], is guilty of an assault shall be punished as follows:
>
> \*   \*   \*   \*   \*   \*
>
> "(b) Assault with intent to commit any felony, except murder or rape, by fine of not more than $3,000 or imprisonment for not more than ten years, or both.
>
> "(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.
>
> "(d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both."

Myer H. Gladstone and Robert W. Heinze, Chicago, Ill., for appellant.

Gilmore S. Haynie, Ft. Wayne, Ind. and James E. Keating, Asst. U. S. Atty., South Bend., J. Byron Hayes, Asst. U. S. Atty., Fort Wayne, Joseph J. Cella, Atty. Dept. of Justice, Washington, D. C., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The defendant, John Patrick Gill, was found guilty on each of the three counts of an indictment which charged him with (1) an assault on one Edna Whimsett with a dangerous weapon, a piece of a broken bottle, with intent to do bodily harm and without just cause or excuse; (2) assaulting her by striking, beating and wounding her; and (3) assaulting her with intent to commit the felony of sodomy. The indict-

Under Count III of the indictment the court assessed a fine of $3,000 and sentenced the defendant to imprisonment for a period of ten years. Under Count I of the indictment the court sentenced the defendant to imprisonment for a period of five years and under Count II to imprisonment for a period of six months. The sentences on Counts I and II were to run concurrently with the sentence on Count III.

The defendant first attacks the judgment and the sentence on the ground that Count III of the indictment, charging

assault with intent to commit the felony of sodomy, did not charge "Assault with intent to commit any felony, except murder or rape," within the meaning of section 113(b) of Title 18, United States Code. The defendant says that, since we have no act of Congress defining the crime of sodomy or fixing the punishment therefor, sodomy is not a crime against the United States. It is true, as this court said in United States v. Sutter, 7 Cir., 160 F.2d 754, 756: "There are no common law crimes within the jurisdiction of the Federal Government." And, as the Supreme Court stated in Viereck v. United States, 318 U.S. 236, 241, 63 S.Ct. 561, 563, 87 L. Ed. 734: "One may be subjected to punishment for crime in the federal courts only for the commission or omission of an act defined by statute, or by regulation having legislative authority, and then only if punishment is authorized by Congress."

The present Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is a revision and codification by Congress, by Act of June 25, 1948, Ch. 645, 62 Stat. 683, of the entire subject-matter of crimes against the United States and Federal criminal procedure. The first section of that Act, Title 18, United States Code, section 1, classified offenses and in paragraph (1) defined a felony as "Any offense punishable by death or imprisonment for a term exceeding one year". In that definition of felony, found in the revision and codification of laws defining crimes against the United States, it seems clear that Congress was speaking only of offenses against the United States, offenses which Congress had defined and for which Congress had fixed a penalty.

Section 113 of Title 18 fixes the punishment for various types of assaults. Paragraph (a) of that section fixes the punishment for assault with intent to commit murder or rape as imprisonment for not more than twenty years. Paragraph (b) of the section then fixes the punishment for assault with intent to commit any felony, except murder or rape, by a fine of not more than $3,000 or imprisonment for not more than ten years, or both. Murder is defined and punishment of imprisonment for more than one year is fixed by section 1112, Title 18, United States Code. By section 2031 of Title 18, United States Code, punishment by imprisonment for more than one year is also fixed for rape. Thus both of these crimes, since they are punishable by imprisonment for a term of more than one year, are brought within the classification of felonies as defined by section 1 of the Act.

■ But we cannot agree with the defendant that sodomy, when committed within the boundaries of Indiana and within the maritime and territorial jurisdiction of the United States, was not a crime against the United States. Indiana, by section 10-4221 of Burns' Indiana Statutes Annotated (1942 Replacement), has defined sodomy, and fixed the punishment therefor as a fine of not less than $100 nor more than $1,000, to which may be added imprisonment in the state prison for not less than two nor more than fourteen years. The Supreme Court of Indiana has held that the acts of which this defendant is charged constituted sodomy within the meaning of the Indiana statute. Glover v. State, 179 Ind. 459, 101 N.E. 629, 45 L.R.A., N.S., 473. By the terms of 18 United States Code, section 13, Congress has provided that whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of any act which, although not made punishable by any enactment of Congress, would be punishable if committed within the jurisdiction of the state in which such place is situated by the laws thereof in force at the time of such act, shall be guilty of a like offense and subject to a like punishment.

■ The acts here charged were committed on a voyage across Lake Michigan from Chicago, Illinois, to Michigan City, Indiana, on a vessel enrolled under the laws of the United States. Therefore, pursuant to 18 United States Code, section 7(2), at the time of the occurrences here charged the defendant, on the Pat Pam, was within the special maritime and territorial jurisdiction of the United States.

■ If, on that trip, the defendant had committed the crime of sodomy, as defined

by the Indiana statute, he could have been charged, tried, convicted and sentenced for from two to fourteen years by the proper United States District Court for having committed a crime against the United States because 18 United States Code, section 113(b), by adopting the definition of and punishment for sodomy as found in the Indiana statute has expressly made sodomy a crime against the United States. And, since the possible punishment fixed for the crime was imprisonment for more than one year, the crime falls within the classification of felony as defined in 18 United States Code, section 1.

But the defendant says that if we are prosecuting him in the Federal courts under the Assimilative Crimes Statute we must limit the punishment to the same punishment as provided by the Indiana statute. This would, of course, be true if the defendant had been prosecuted for the crime of sodomy as defined by the Indiana statute. But the defendant was not so charged. He was charged only for assault with intent to commit a felony as defined by 18 United States Code, section 113(b). We look to the Indiana statute and to 18 United States Code, section 13, the Assimilative Crimes Statute, therefore, only for the purpose of finding that Congress has made the crime of sodomy a crime against the United States and to determine the punishment fixed therefor. Since the crime was made punishable by imprisonment for more than one year, it was a felony within the meaning of 18 United States Code, section 1, and Count III of the indictment did charge a crime against the United States.

The defendant also contends that the Government failed to prove that the crimes charged in the indictment were committed within the boundaries of the State of Indiana. The northern boundary of Indiana was established by an Act of Congress approved April 19, 1816. In that Act the northern boundary of Indiana as it extended across the lower part of Lake Michigan was described as an "east and west line drawn through a point ten miles north of the southern extreme of Lake Michigan." This northern boundary line of Indiana was shown on a navigation map of the southern part of Lake Michigan prepared in 1950 by the United States Lake Survey Corps of Engineers.

The complaining witness testified positively that at the time of the commission of the crimes charged, the Pat Pam boat, in which she and the defendant were going to Michigan City, was in Indiana. She did not explain, however, how she knew this.

The defendant said that on the day in question they just followed an easterly course in going to Michigan City from the Jackson Park Yacht Club in Chicago. A direct course from the Jackson Park Yacht Club to Michigan City, as shown by the map, is only a very little south of east. The defendant testified that on the trip they saw another boat, the Norma Jean, up ahead of them; that for some time they followed that boat; and that it looked as if that other boat was heading in an easterly direction. The defendant said that when the Norma Jean broke down they stopped, offered help and then drove ahead toward Michigan City.

Chauncey Robinson, the owner of the Norma Jean, had had considerable experience in navigating his boat on Lake Michigan. He testified that on that day he and a party of friends were going to Michigan City in the Norma Jean; that they did not go directly across the lake but rather followed along the shore; and that when they were stopped with engine trouble and the Pat Pam came up to them, they were about three miles out in the lake from Burns Ditch which flows into Lake Michigan about seven miles east of Gary, Indiana. Robinson then marked on the United States Lakes Survey Map the path that his boat took that day to Michigan City, Indiana, and also marked the approximate spot where his boat was when overtaken by the Pat Pam. Robinson explained that he owned and used a copy of this map in navigating his boat and he pointed out on the map the location of a buoy which marked the site of a wreck. Robinson said that his boat had passed the buoy about a half an hour before the Pat Pam pulled alongside. The map shows that this buoy

was only a short distance north of the Indiana line. Traveling a half hour in the direction they were going would have taken them well within the Indiana line at the time the Pat Pam came up to them.

It is not disputed that the trouble on the Pat Pam between the defendant and the complaining witness occurred after the Pat Pam left the Norma Jean and proceeded on the way to Michigan City. To have then gone out into the lake beyond the Indiana line would have taken them considerably out of their way.

Two other witnesses, who were on the Norma Jean as passengers that day, testified that, about an hour and a half after the Norma Jean had left the meeting point with the Pat Pam and was proceeding on her course to Michigan City, they saw "the Pat Pam, or a boat of the same lines," between the Norma Jean and the shore. These witnesses said that they looked at the other boat through binoculars and that it then appeared to be drifting. It was the only other boat they saw out in the lake in that vicinity on that day.

The defendant was also acquainted with the shore line of Lake Michigan between Chicago and Michigan City. He heard these witnesses testify as to the location of the Pat Pam but there was no denial by him that the Pat Pam was inside the Indiana boundary at the time of the trouble.

We think the District Court correctly found that the Pat Pam was within the Northern District of Indiana at the time of the alleged assaults by the defendant.

■ Finally, as to the assaults alleged in the indictment, the defendant insists that the judgment was not sustained by the evidence. The complaining witness testified that she was assaulted by the defendant as charged and the defendant testified that he did not assault her. The defendant said that the trouble between them started when the complaining witness, without provocation and without warning, hit him over the head with a bottle of gin with such force that he was stunned. No one else was present to see what actually happened. The complaining witness said that the defendant twice pushed her off the back end of the boat and that she climbed back into the boat without assistance. The trial judge expressed serious doubt as to her testimony on this point but said that he was "fully convinced that the complaining witness, Edna Whimsett, was unmercifully assaulted by this defendant." The judge also said: "There is no way possible under this evidence that this complaining witness could have been abused in the manner that these exhibits show she was abused except by some very vicious acts on the part of this defendant."

The trial judge saw and heard the defendant and the complaining witness testify. He heard the defendant tell of his two previous convictions for crime—one for the illegal possession of alcohol in 1939 and the other for robbery. The defendant also told the court that prior to Government restrictions he had been a bookmaker.

The trial judge also saw and heard defense witness Elsbeth Gehorsam, a physician practicing psychiatry in Memphis, Tennessee, testify that she had been a doctor in the Gailor Phychiatric Hospital in Memphis when the complaining witness was a patient in that hospital, and that during her stay in that hospital, the complaining witness was diagnosed as having a "psychopathic personality, without psychosis." Dr. Gehorsam explained that the term "psychopathic personality" means that the person so characterized has "an unstable personality, with a tendency to episodic conflicts with the environment, which can occur in a violent manner, and which repeat themselves periodically all during the person's life." Dr. Gehorsam said that the complaining witness, after being in the hospital in Memphis for about a month, was released at her husband's request.

Another psychiatrist, Harry R. Hoffman of Chicago, corroborated the testimony of Dr. Gehorsam as to the behavior of a person having a psychopathic personality but without psychosis. But the trial judge, after hearing this medical testimony, concluded that: "I think there is no evidence that indicates that she [the complaining

witness] is incredible in the main aspects of her testimony."

A consideration of the entire record in this case convinces us that the finding of guilty on all of the counts of the indictment was amply supported by the evidence.

The judgment of the District Court is, therefore,

Affirmed.