Albert Alexander **PINKNEY**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 23613.

United States Court of Appeals
Fifth Circuit.

July 26, 1967.

Rehearing Denied Aug. 25, 1967.

899

John Paul Howard, Jacksonville, Fla., for appellant.

Thomas M. Baumer, Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before WASHINGTON,* TUTTLE and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

■ In this appeal from a jury verdict of guilty and subsequent confinement sentence of two years under a single count indictment charging violation of the second clause of Title 18, U.S.C. Section 2113(a),[1] for entry with intent to commit larceny of a building used in part as a savings and loan association within the meaning of Title 18, U.S.C. Section 2113(g),[2] the appellant Pinkney assigns numerous claimed errors on the part of the trial court. We have given careful consideration to each of appellant's contentions, including that of the insufficiency of the evidence to support conviction, but find no reversible error on the part of the trial court and accordingly affirm.

Summarized, the government's evidence showed [3] that on Sunday, January 24, 1965, a residence used in part as the office of the Ducote Federal Credit Union was broken into and entered by force. The room used as the office of the Credit Union by its Assistant Treasurer, one Kirkland, housing the records of the Credit Union, was forcibly entered and an attempt was made to break into a locked closet containing the Credit Union's iron safe by removal of the door knob and hinge pins, and by battering the wood panel wall adjacent to the safe. Whether the safe contained money or other property the subject of larceny was not developed by the evidence.

Appellant's involvement was shown by the testimony of Baker and Ashley, who participated in the offense, Baker fully and Ashley to a limited extent. The events related occurred during the Sunday morning hours when the building's occupants were absent attending Sunday School and church. Baker, who at the time of trial had previously plead guilty and received a confinement sentence, drove appellant's car to the building and broke and entered it about ten o'clock. Baker testified that on this occasion he was unsuccessful in an attempt to gain access to the safe and returned to appellant's home to seek his assistance. Appellant took Baker to meet Ashley, whom Baker says he then met for the first time.[4] When the three attempted to leave Ashley's house in appellant's car and it would not start, they went to appellant's brother's filling station and appellant borrowed a car from one Cushing. With appellant driving the three proceeded to the vicinity of the Credit Union, appellant parked the car, and Baker and Ashley alighted and went to the residence housing the Credit Union, Baker again entered and Ashley returned to the car whereupon he and appellant left the area. A neighbor, Mrs. Crawford, identified Cushing's car as the second automobile she saw in the vicinity of the Credit Union on the day in question. Baker testified that he intended to steal the safe

---

* Of the District of Columbia Circuit, sitting by designation.

1. "Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny * * * shall be fined * * * or imprisoned * * *."

2. "As used in this section the term 'savings and loan association' means any Federal savings and loan association and any 'insured institution' as defined in section 401 of the National Housing Act, as amended, and any 'Federal credit union' as defined in section 1752 of Title 12. As amended Aug. 3, 1950, c. 516, § 1, 64 Stat. 394; Apr. 8, 1952, c. 164, 66 Stat. 46; Sept. 22, 1959, Pub.L. 86–354, § 2, 73 Stat. 639."

3. Appellant offered no evidence, so that the only evidence before the jury was that produced by the government.

4. Ashley's testimony was that he, Baker and the appellant had discussed the Credit Union the night before and that he had agreed to assist Baker.

of the Credit Union, that he could not accomplish this on the first trip and thus returned to the appellant for help. Baker also said that he told appellant that without him and the car he could not accomplish the theft.

■ The question of appellant's guilt was properly submitted to the jury under instructions covering the "aider and abettor statute", Title 18, U.S.C. Section 2. The evidence was clearly sufficient to warrant submission of appellant's guilt or innocence to the jury's determination. The motion for judgment of acquittal was properly denied, as was the motion for new trial.

■ It was not necessary to prove the contents of the safe, nor would it make any difference if the safe had been proved to be empty. The elements of the offense charged are the entry and the holding of an intent to commit larceny at the time of entering. Success or failure of the venture is immaterial. Audett v. Johnston, 142 F.2d 739 (9 Cir. 1944) cert. denied 323 U.S. 743, 65 S.Ct. 50, 89 L.Ed. 595; Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, 59 A.L.R.2d 940 (1957); Williamson v. United States, 265 F.2d 236 (5 Cir. 1959) cert. denied 358 U.S. 941, 79 S.Ct. 348, 3 L.Ed.2d 349 (1959); Clark v. State, 86 Tenn. 511, 8 S.W. 145 (1888).

■ It is urged by appellant that he may not be convicted as a principal when he did not enter the building or intend personally to enter. The answer to this is the plain provision of Title 18, U.S.C. Section 2(a), supra, providing:

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

■ The driver of a getaway car is equally chargeable as a principal with one actually entering the bank. United States v. Simmons, 281 F.2d 354 (2 Cir. 1960); Tarkington v. United States, 194 F.2d 63 (4 Cir. 1952). Further, the jury was warranted in believing from Baker's testimony that if his second attempt to get at the safe was successful, he expected appellant and the borrowed car to be used in removing the safe from the premises.

■ Equally without merit is the contention that the structure involved herein being used in part as a residence is not such a structure as could be deemed a building within the provisions of Title 18, U.S.C. Section 2113(a). (See footnote No. 1, supra). See Churchill v. Anderson, 128 F.Supp. 425 (W.D.Ky.1955), where the court defined a building as a structure enclosing space within walls and roof. The language of Section 2113 "or any building used in whole or in part as a bank, or as a savings and loan association" is identical to the language "or any building used in whole or in part as a post office" in Title 18, U.S.C. Section 2115, prohibiting the breaking into or attempt to break into such building with intent to commit larceny or other depredation therein. The latter statute forms the basis for countless prosecutions all over the United States involving the breaking into or attempted breaking into of branch post offices situated in drug stores, variety stores, grocery stores, general stores and the like.

■ Another assignment asserts error in permitting statements or admissions of the appellant to be received in evidence without a prior showing of warning as to his constitutional rights to counsel and to remain silent. This goes solely to two answers in the testimony of F.B.I. Special Agent McCarthy who testified that when he arrested appellant February 1, 1965, he observed a 1954 green Buick parked at the residence and that Pinkney acknowledged that he had the use of the car, but that the registration did not check out to Pinkney. This testimony came in without objection and without cross-examination. Additionally, if it proved anything it was cumulative to Baker's testimony already in the record. Timely objection would have given the trial court an opportunity to strike the testimony or, in the alternative, to require proof of a warning as a predicate to its admission. As the record stands,

our only right to review the question raised would be to consider it as plain error under Rule 52(b), Federal Rules of Criminal Procedure. The circumstances here present do not show that the appellant's substantial rights were prejudiced and we decline to apply the plain error rule.

The appellant is in no better position with respect to his claim of error on the part of the trial court in failing to define circumstantial evidence in its jury charge. At a preliminary charge conference appellant's counsel mentioned the omission of a charge on circumstantial evidence without specifying what type of charge he requested and without submitting a requested written instruction as required by Rule 30, Federal Rules of Criminal Procedure. He made no objection to this omission at the conclusion of the court's charge, although given an opportunity to do so. The last two sentences of Rule 30 are set out in the margin.[5]

The trial court did fully instruct the jury on the standard of reasonable doubt as defined by Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150 (1954). The jury was told that intent may be proved by circumstantial evidence and that it was to consider all the "facts and circumstances presented to you by the witnesses, exhibits, and other forms of evidence" in determining the defendant's intent. This was followed by "although witnesses may see and hear and thus be able to give direct evidence of what a person does or what a person fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted. But, what a person does or fails to do may indicate intent or lack of intent." Actually, circumstantial evidence was at best a slight part of the government's proof in this case. Baker testified directly that his intent both at the time of the original entry and of the second entry was to steal. Without dispute the appellant was present on the latter occasion with full knowledge of the purpose for his being there. Appellant makes no suggestion of how his substantial rights were affected by the court's failure to define more fully the term "circumstantial evidence". Again, under the circumstances present, we do not believe that invocation of the plain error rule is required. See Butler v. United States, 254 F.2d 875 (5 Cir. 1958); Gendron v. United States, 295 F.2d 897 (8 Cir. 1961).

Appellant did object at the close of the court's charge to its charge on presence and guilty knowledge, given as a part of its instruction as to aiding and abetting. The precise language objected to is the underscored portion of the following sentence (given after a clear statement that to be an "aider and abettor" the defendant must have associated himself with the venture and taken active steps in it as something he wished to bring about, seeking by his action to make the venture succeed):

"Mere presence at the scene of the crime and guilty knowledge of the crime, however, are not sufficient to establish aiding and abetting *unless you are convinced beyond a reasonable doubt that the defendant was a participant rather than merely a knowing spectator.*"

It is urged that the italicized language diluted and made equivocal the prior statement as to the effect of mere presence and guilty knowledge. We do not agree, holding rather that taken as a whole the charge was clear and correctly stated applicable legal principles. No prejudice to the appellant's rights is demonstrated by this assignment.

5. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury [and, on request of any party, out of the presence of the jury.]

The bracketed language was added by the amendment to the Rules effective July 1, 1966, which was subsequent to the trial below in March, 1966.

In cross-examining the witness Ashley, appellant's counsel asked if he had "ever been convicted of a crime". The court sustained the government's objection to *the form of the question,* and the issue was not pursued. The general rule in this Circuit is set forth in Roberson v. United States, 249 F.2d 737 (5 Cir. 1957) cert. denied 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958):

> "For the purpose of discrediting a witness in a Federal criminal trial it is not improper to show that the witness, including a defendant who has elected to testify, has been convicted of a felony or a misdemeanor involving moral turpitude."

The question propounded to Ashley was too broad and unspecific, since the term "crime" includes many misdemeanors not involving moral turpitude.

During the voir dire examination of prospective jurors the appellant objected to the panel of jurors present on the ground that they were blue ribbon jurors, not selected by methods acceptable by law and composed of individuals who were neither peers of the appellant nor representative members of the community. The objection was overruled by the trial court. During the two months between notice of trial and commencement of trial no challenge to the array or motion attacking the method of the selection of jurors was filed. It is clear that motions attacking the jury panel are encompassed by Rule 12(b)(2), Federal Rules of Criminal Procedure. See Shotwell Mortgage Company v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948).

It is, of course, not the makeup of a particular panel which determines prejudice to the defendant in a criminal trial but the manner of the selection of names to be placed in the jury wheel. See Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946). There is no showing here as to how juries are selected in the Middle District of Florida nor in what respect the jury selective system in that District is illegal, nor in what manner the appellant has been prejudiced by the jury selective system, whatever it may be. See further Poliafico v. United States, 237 F.2d 97 (6 Cir. 1956). The assignment of error based on this ruling is patently devoid of substance.

During the voir dire examination of the jurors by the court, the court refused appellant's request for a show of hands by the jurors in the box indicating which of them were college graduates. This refusal is assigned as error. The latitude of the voir dire examination is within the sound discretion of the trial court. Yarborough v. United States, 230 F.2d 56 (4 Cir. 1956); Hebron v. Brown, 248 F.2d 798 (4 Cir. 1957). Further, as pointed out by appellee, the educational background[6] of each juror was available to appellant in the returned questionnaires completed by all jurors and on file in the Office of the Clerk of the trial court. It would appear that appellant had opportunity to examine such questionnaires to determine the educational background of the jurors. No abuse of discretion on the part of the trial court appears in this connection.

In sum, we conclude that appellant Pinkney failed below either timely to raise or properly to preserve for review, or both, some of the questions he raises on appeal. As to those questions timely and properly raised and preserved for review, in the main questions regarding the nature and sufficiency of the government's proof, his contentions are not supported by the record and are without merit. The judgment of conviction is affirmed.

6. Question 10 was "What education have you had?"