**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph Leroy MILBY and Andy K. McClellan, Defendants-Appellants.**

**No. 18176.**

United States Court of Appeals Sixth Circuit.

Sept. 25, 1968.

---

Terrence R. Fitzgerald, Louisville, Ky., for Joseph Leroy Milby.

Jack M. Lowery, Jr., Louisville, Ky., for Andy K. McClellan.

John L. Smith, Asst. U. S. Atty., Louisville, Ky., for appellee; Ernest W. Rivers, U. S. Atty., Louisville, Ky., on brief.

Before O'SULLIVAN, McCREE and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Joseph Leroy Milby and Andy K. McClellan appeal from judgments convicting them, upon jury trial, of "assault with intent to commit a felony, that is, sodomy" upon a named person (Count I of the involved indictment) and the taking of a wrist watch from said person "by force, violence and intimidation" (Count II of the indictment), in violation of 18 U.S.C. §§ 113(b) and 2111, respectively.[1]

---

1. 18 U.S.C. § 113 reads, in part:

"Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

\*　　\*　　\*　　\*　　\*

"(b) Assault with intent to commit any felony, except murder or rape, by fine of not more than $3,000 or imprisonment for not more than ten years, or both."

§ 2111 reads:

"Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes from the person or presence of another anything of value, shall be imprisoned not more than fifteen years."

They were tried in the United States District Court for the Western District of Kentucky, jurisdiction under the mentioned statutes being grounded on the special territorial jurisdiction of the United States, 18 U.S.C. § 7—the crimes having taken place on the United States Military Reservation at Fort Knox, Kentucky. Appellant Milby received consecutive sentences of five years on each count; McClellan was sentenced to ten years on Count I and five years on Count II, said sentences to run consecutively. A third defendant, one Hayes, also involved in the conduct hereinafter described, was found guilty under Count I of the lesser included offense of simple assault, and guilty under Count II. He was sentenced under the Youth Corrections Act, 18 U.S.C. § 5005, et seq. He has not appealed. A fourth participant in the affair, one Edwards—later apprehended—was separately indicted for the same two offenses as appellants, pleaded guilty to both counts, and was also sentenced under the Youth Corrections Act.

Three questions are presented: 1) Were the appellants, or either of them, entitled to direction of acquittal as to one or both of the counts because of insufficiency of the evidence? 2) Did the trial judge commit reversible error as to appellant Milby in his instructions on aiding and abetting? and 3) Was the sentence of ten years imposed upon appellant McClellan under Count I illegal?

We affirm and discuss the questions before us as follows:

### 1) Sufficiency of evidence.

The District Judge denied each appellant's timely motion for judgment of acquittal, made upon the ground of insufficiency of evidence. The criminal enterprise here involved, as told by the complaining witness, was a revolting affair during which four young men sexually assaulted a 15 year old boy. Appellant McClellan was 25 years of age and Milby was 20; a third defendant, Hayes, was 18 and the fourth participant, Edwards, was also a minor.

Dealing first with the sexual assaults, appellants charge that the testimony of the complaining witness—the victim of the assaults—was inherently incredible, weakened by cross-examination, and its probative worth destroyed by testimony offered to oppose it. Appellant Milby urges as an additional proposition that if the evidence relevant to the Charges of Count I substantiates anything at all, as to him, it is that he committed an act of sexual perversion on the victim which was not an act of sodomy under the applicable law—in this case that of Kentucky.[2] Concededly, by virtue of Commonwealth v. Poindexter, 133 Ky. 720, 118 S.W. 943 (1909), in order for the act of sodomy to be committed by one person on another, under Kentucky law, it is necessary that there be anal penetration. He says this was not accomplished or attempted by him.

Avoiding, where possible, recital of loathsome details, we set out the facts contained primarily in the testimony of the complaining witness, whom we shall herein refer to as the victim or the boy. On the afternoon of January 14, 1967, he was hitchhiking down a Kentucky highway on his way to a youth dance to be held that evening. He was picked up by a vehicle driven by appellant McClellan, containing also Milby, Hayes and Edwards. There was evidence that the occupants of the car had no particular destination. It was a Saturday afternoon

2. The statute allegedly violated, 18 U.S.C. § 113(b), refers to "assault with intent to commit any felony." Sodomy is not a defined felony by Congressional enactment but becomes such here by virtue of 18 U.S.C. § 13 which provides that any act committed on a military reservation, such as Fort Knox here, shall be punishable as a federal offense if it would be punished by the laws of the state in which such federal facility is located. Under Kentucky law, K.R.S. 436.050, sodomy is defined as a crime punishable by imprisonment for not less than two nor more than five years. Title 18, U.S.C. § 1 provides that any offense punishable by "imprisonment for a term exceeding one year is a felony."

and the young men had supplied themselves with a couple of bottles of wine which they were consuming. There was evidence also that one of the group was inhaling glue fumes, and the occupants of the car were spraying each other with a bottle of cologne that was in the possession of the boy later assaulted. The victim said he had one drink of the wine. When it appeared that the car was going to change its direction, the boy sought to leave but was not allowed to get out. Thereafter, McClellan turned off onto a gravel road. After finding a parked bus at his first chosen destination, he turned the car around and drove to a secluded spot at the end of a gravel road.

When the vehicle and its occupants reached this spot, and before the occupants alighted, one of the boys (Edwards) reached over from the back seat and pulled the boy backwards, causing his back to be arched over the front seat. There was evidence that all of the occupants then joined in attacking the boy, while someone in the back seat stripped off his wrist watch and McClellan, from the front seat, took his wallet and searched it, but replaced it after finding no money. The theft of the wrist watch is the basis of the charge in Count II.

The assailants and the victim then alighted from the vehicle and he attempted to escape, but was restrained. From this point on the witness recounted the process by which all of the four—Milby, McClellan, Hayes and Edwards—cooperated in forcing him to submit to various sexual assaults, including that of sodomy. He testified definitely that each of the four committed at least one of the acts and, on direct, described both McClellan and Milby as performing sodomy. On cross-examination, the victim was not clear as to whether Milby's activity actually met the Kentucky definition of sodomy. During the entire activities, the appellants, with Hayes and Edwards, were congregated in an area not more than twenty or thirty feet from the parked car, and at times were all immediately present while one of their number took his turn at sexually assaulting the victim. At the end of the affair, one of the assailants told the boy that he would kill him if he told what had happened. When he was finally released, he was advised to say that he had been in a fight, thus to explain his bruised and battered condition.

We need not detail the events which followed the victim's call to the police. The subsequent investigation by federal as well as state police authorities, in some substantial respects, corroborated the victim's account and in other respects would, to a degree, cast doubt on his story. None of the police discoveries, however, was of conclusive probative force. The appellants and Hayes took the stand and denied the crimes charged to them. They admitted that they did pick up the complaining witness at the time alleged, but claimed they let him out of the car without abusing him.

█ █ It was the jury's function to resolve the issues of credibility and any conflicts in the evidence. United States v. Hoffa, 349 F.2d 20, 38 (6th Cir. 1965); United States v. Kessler, 352 F.2d 499 (6th Cir. 1965); United States v. Conti, 339 F.2d 10, 13 (6th Cir. 1964). In testing whether there is sufficient evidence to allow a case to be submitted to the jury, the trial judge must view the evidence in a light most favorable to the government. United States v. Decker, 304 F.2d 702, 705 (6th Cir. 1962); United States v. Berkley, 288 F.2d 713, 716 (6th Cir. 1961), cert. denied, 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961). And it is this Court's duty to take a like view of the evidence,

> "and determine therefrom whether the finding was supported by substantial and competent evidence, and where there is substantial and competent evidence, which if believed, supports the conviction, the appellate court can not weigh the evidence or determine the credibility of witnesses." Battjes v. United States, 172 F.2d 1, 5 (6th Cir. 1949).

In this case there was direct evidence of the criminal conduct charged, and the

jury obviously found such evidence credible. The District Judge, who saw and heard the witnesses, denied the motion for judgment of acquittal.

■ We still must deal with appellant Milby's contention that, in all events, the evidence as to him disclosed only a form of sexual perversion that did not come within Kentucky's definition of sodomy. The victim, on direct, gave several accounts of Milby committing the act of sodomy, but on cross-examination agreed that the act of perversion committed by Milby was not such as would meet Kentucky's specific definition of such offense, although it was equally odious. But even assuming the insufficiency of the evidence in this respect, if Milby aided and abetted the specific conduct described in the indictment, he may be punished as a principal. 18 U.S.C. § 2. We are of the view that regardless whether or not Milby committed the technical act of sodomy, there is substantial evidence that others of the defendants did do so, including appellant McClellan, and that Milby was indeed an aider and abettor of these others.

■ Like reasoning compels us to find that whether or not Milby or McClellan actually took the victim's watch, the evidence may be fairly viewed as showing that both participated actively in the whole criminal affair in such a way as to aid and abet the theft. We agree that in order to aid and abet one must do more than be present at the scene of the crime and have knowledge of its commission. See, e. g., United States v. Luxenberg, 374 F.2d 241, 249–250 (6th Cir. 1967); United States v. Garguilo, 310 F.2d 249, 253–254 (2d Cir. 1962). The Supreme Court in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L. Ed. 919 (1949), quoted Judge Learned Hand's statement from United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938) as follows:

"In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he partici-

pate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' "

We think it unnecessary that each defendant be shown either to have committed the offenses charged in the indictment or to have physically assisted in every detail of their perpetration. Presence at the scene and active participation in the criminal conduct being undertaken, in such a way as to encourage the commission of the charged offenses, is enough to constitute aiding and abetting; by such conduct, one assists others in the criminal enterprise. And there is direct testimony that each appellant did, in fact, force the victim to endure one or more sexual assaults and did, in fact, intimidate him by physical force. We think there was ample evidence for a finding of aiding and abetting.

2) Instructions on Aiding and Abetting.

Appellants charge reversible error in the District Judge's instructions on aiding and abetting. This is what he told the jury on the subject:

"In an act where two or more persons are charged with the commission of a crime the guilt of the accused may be established without proof that the accused personally did every act constituting the offense charged.

"Whoever commits against the United States, or whoever aids, abets, counsels, demands, produces, or procures its commission is punishable as a principal.

"Whoever willfully causes an act to be done which if directly performed by him or another, would be an offense against the United States is punishable as a principal.

"Every person who thus willfully participates in the commission of a crime may be found guilty of that offense.

"Participation is willfully done if done voluntarily and intentionally and with specific intent to do something that the law forbids or with specific intent to fail to do something the law requires to be done, that is to say, with bad

purpose, either to disobey or to disregard the law.

"In order to aid and abet another to commit a crime it is necessary that the accused willfully associated himself in some way with the criminal venture and willfully participated in it as he would in something he wishes to bring about, that is to say that he willfully seeks by some act or omission of his to make the criminal venture succeed."

██ We first observe that no instructions on aiding and abetting were proffered by appellants. Counsel's objection that,

"I would like also to object that the instructions do not indicate what constitutes sufficiency, what constitutes participation in a crime,"

does not meet the requirement of Rule 30 F.R.Crim.P. that an objection to an omission from a charge must state "distinctly the matter to which he objects and the grounds of his objection." It is the rule that in such a case as this the trial judge should, without request, advise the jury of the applicable law, especially where, as here, it was important that the jury know what conduct of the defendants could be considered by them as amounting to aiding and abetting. We are satisfied, however, that the relevant instructions, which bear close resemblance to the recommended instructions on aiding and abetting as found in 27 F.R.D. 53, 54, were sufficient to discharge the trial judge's initial duty. If further and more detailed discussion was desired, the general language of the quoted objection was not sufficient to require it. In this situation, we will not employ Rule 52(b) of the Federal Rules of Criminal Procedure to find plain error in the trial court's instructions.

"Our discretionary power in this regard must be viewed in light of Rule 30 and in no event can be exercised except in situations where the error [we find none here] is such as to involve a manifest miscarriage of justice." United States v. Provenzano, 334 F.2d 678, 690 (3rd Cir. 1964).

Appellant Milby asserts that,

"Even if the instructions were abstractly correct, it would be erroneous in the case at bar because the closeness of the issue as to Milby imposed a duty on the trial judge to instruct the jury with extreme precision and to caution them plainly that presence and guilty knowledge is not enough."

He relies upon United States v. Garguilo, 310 F.2d 249, 253–54 (2nd Cir. 1962), to support that statement. Without detailing them, we mention that the special facts of that case distinguish it. Judge Friendly observed that the there criticized charge "may have led the jury to believe that a finding of presence and knowledge on the part of Macchia was enough for conviction." 310 F.2d, at 254. Such cannot be said of the District Judge's charge here. Neither were the proofs of appellants' participation in the larcenous and sexual assaults upon their victim at all comparable to the scant evidence of Garguilo's activity in the transportation of counterfeiting equipment. In the case at bar, the District Judge also fully discussed the requirements of willfulness, intent, and guilty beyond a reasonable doubt. We are not persuaded that there is reversible error in the instructions.

### 3) Excessive Sentence.

██ Appellant McClellan says the ten year sentence imposed under Count 1 is illegal. He was prosecuted under 18 U.S.C. § 113(b) which permits a *ten year* sentence for "assault with intent to commit *any felony*"; the indictment was for assault with intent "to commit a felony, that is, sodomy." Sodomy is not defined as a felony by any federal statute, but becomes such by reason of 18 U.S.C. § 13 under which any person guilty of an act committed on the Fort Knox Reservation,

"although not made punishable by any enactment of Congress, would be punishable if committed * * * within the * * * State * * * in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a

like offense and subject to a like punishment."

K.R.S. 436.050 makes sodomy a felony punishable by imprisonment "for not less than two *nor more than five years.*" (Emphasis supplied.)

Appellant asserts that because *five years* would have been the maximum sentence if the prosecution was for sodomy, no greater sentence should be imposed for assault with intent to commit such crime. No case is cited to support this assertion, and although the argument has the virtue of a certain symmetry. Congress chose to write the statute otherwise. Moreover, it can be seen that in many cases the assault would be a greater threat to an individual's bodily integrity than the commission of the felony, e. g., larceny. Furthermore, sodomy may be committed without the element of coercion present in an assault, as where consented to. We think appellant's argument has been answered by the opinion of Judge Swaim in United States v. Gill, 204 F.2d 740 (7th Cir. 1953), cert. denied, 346 U.S. 825, 74 S. Ct. 42, 98 L.Ed. 350 (1953), the only case in point discovered by our own research. There also the contention was made that the state law maximum penalty provision for the crime of sodomy should limit the punishment imposable for violation of 18 U.S.C. § 113, assault with intent to commit sodomy. Judge Swaim stated:

> "But the defendant says that if we are prosecuting him in the Federal courts under the Assimilative Crimes Statute we must limit the punishment to the same punishment as provided by the Indiana statute. This would, of course, be true if the defendant had been prosecuted for the crime of sodomy as defined by the Indiana statute. But the defendant was not so charged. He was charged only for assault with intent to commit a felony as defined by 18 United States Code, section 113(b). We look to the Indiana statute and to 18 United States Code, section 13, the Assimilative Crimes Statute, therefore, only for the purpose of finding that Congress has made the crime of sodomy

a crime against the United States and to determine the punishment fixed therefor. Since the crime was made punishable by imprisonment for more than one year, it was a felony within the meaning of 18 United States Code, Section 1, and Count III of the indictment did charge a crime against the United States." 204 F.2d at 743.

Judgment affirmed.