**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Reies Lopez TIJERINA, Defendant-
Appellant.**

**No. 138–70.**

United States Court of Appeals,
Tenth Circuit.

Aug. 4, 1971.

John A. Babington, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., and Michael P. Watkins, Asst. U. S. Atty., were with him on the brief), for plaintiff-appellee.

Leonard E. Davies, Denver, Colo., for defendant-appellant.

Before LEWIS, Chief Judge, and JOHNSEN,* and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This appeal is taken from a judgment of conviction of three offenses charged in connection with a demonstration at which two United States Forest Service signs were burned in the Santa Fe National Forest. The convictions were based on an indictment charging (1) that appellant and his wife willfully injured a Forest Service sign near Gallina, New Mexico, causing damage in excess of $100 in violation of 18 U.S.C. § 1361 (prohibiting willful injury of Government property) and 18 U.S.C. § 2 (making one aiding and abetting commission of an offense punishable as a principal); (2) that appellant and his wife willfully injured a Forest Service sign near Coyote, New Mexico, causing damage in excess of $100 in violation of the same statutes; and (3) that appellant willfully did forcibly assault, resist, oppose, impede, intimidate and interfere with James Evans, a Forest Service Officer engaged in the performance of his official duties, in violation of 18 U.S.C. § 111. Appellant was found guilty by the jury on all three counts and received concurrent three-year sentences on each conviction, to be served after sentences for convictions affirmed in United States v. Tijerina, 407 F.2d 349 (10th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 76, 24 L.Ed.2d 93. We will deal with

---

* Of the Eighth Circuit, sitting by designation.

the facts in discussing the issues raised on the appeal.

First, we turn to appellant's argument that his convictions for aiding and abetting injury to the Forest Service signs were not supported by the proof. Primarily he says he was merely present as a bystander while his wife burned the signs and that such proof is insufficient, relying on United States v. Milby, 400 F.2d 702 (6th Cir.); and United States v. Garguilo, 310 F.2d 249 (2d Cir.).

There was proof submitted tending to show these facts. Members of the Alianza Federal de Mercedes, an organization concerned with the rights of Spanish American citizens, encamped near Coyote, New Mexico, from June 5 to June 8, 1969. Appellant was president of the organization and was present at the encampment with his wife. The encampment was near a tract of land in the Santa Fe National Forest which is said to have composed the San Joaquin Del Rio de Chama Spanish land grant. It is claimed that heirs of that grant rightfully owned the tract and that it is not Government property.

Appellant was present at the camp sight on the morning of June 8 when his wife announced her intention to burn a Forest Service sign and invited others to accompany her. Shortly thereafter appellant drove his station wagon as the lead vehicle, in which his wife rode, at the head of a line of several cars. They drove about twelve miles to the location of a Forest Service sign near Gallina. There Mrs. Tijerina placed objects around the base of the sign, walked away and returned toward the sign with some glass containers, and then the sign started burning fast. There was proof that the original cost of the wooden portions of both signs and what the repairs would cost were over $100.

The cars then proceeded to the site of the second sign at Coyote, New Mexico. Again appellant drove the lead vehicle in which his wife rode. On the way he stopped his car and pointed to a dead tree from which Mrs. Tijerina obtained some wood. He stopped again and bought gasoline for his car. Some gasoline was put in bottles by another man and this was in the car then with Mrs. Tijerina. There was proof that this gasoline was used by Mrs. Tijerina in burning the second sign. Proof for the appellant was that he came along to the demonstration reluctantly; that he did not start out driving and was not in the lead vehicle to the Gallina sign; that he did not lead the cars toward the Coyote sign; that he attempted to dissuade Mrs. Tijerina from the project; that the gasoline and wood were intended for a bonfire only; and that appellant was shocked when he saw the fire.

■ The conflicting versions of the facts were for the jury and its verdict was against appellant. On appeal we must consider the evidence in the light most favorable to the Government, together with any inferences which may be fairly drawn therefrom, to determine whether there was substantial evidence from which the jury could properly find the accused guilty beyond a reasonable doubt. Mason v. United States, 408 F. 2d 903 (10th Cir.), cert. denied, 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441; Nickles v. United States, 381 F.2d 258 (10th Cir.). The prosecution did not show any participation by appellant in the actual burning of the signs, but did demonstrate his knowledge, his driving the lead vehicle and other acts recited. See Simon v. United States, 78 F.2d 454 (6th Cir.); and Pinkney v. United States, 380 F.2d 882 (5th Cir.), cert. denied, 390 U.S. 908, 88 S.Ct. 831, 19 L. Ed.2d 876. The proof favorable to the prosecution showed more than mere presence and knowledge that the offenses were being committed, as it must to convict one for aiding and abetting. See King v. United States, 402 F.2d 289 (10th Cir.); and United States v. Milby, supra.[1] The *Milby* and *Garguilo* cases,

1. The trial court properly charged that in order to aid and abet another to commit a crime, it is necessary that the defendant willfully associate himself with

relied on by appellant, do not support his challenges to the evidence. We are satisfied the proof amply supports the convictions on counts one and two.

■ Second, as to the conviction on count three charging that appellant did forcibly assault, resist and oppose the Forest Service Officer, appellant again says the proof was insufficient. The gist of his argument is that there was no felony committed in the presence of Officer Evans; that he lacked authority to arrest appellant; and that appellant was entitled to use reasonable force to resist the unlawful arrest, which is all he did.

Mr. Evans was Chief of the Law Enforcement Branch of the Forest Service for the Southwest region. He was authorized by the Forest Service Manual to make arrests without a warrant for violations of law and regulations relating to the National Forest in his presence. See Forest Service Manual, Title 5300, Chapter 5314.1; 36 C.F.R. § 261.-4(c); 16 U.S.C.A. § 559; and Weissman v. United States, 387 F.2d 271 (10th Cir.).[2] He was authorized to make the arrest if he had reasonable grounds to believe appellant had committed a felony or was committing one in his presence, as the instructions stated. See note 3, infra.

There was proof that Evans had been in radio contact with the State Police Officers. He had learned of the burning of the first sign by Mrs. Tijerina. He was told that appellant was driving the car in which she was riding. When he arrived at the Coyote Ranger Station that sign was still burning. Evans said there was a crowd of some 50 to 75 persons that rushed toward him, and appellant was at the front of the group. Evans identified himself as a Federal Officer and told appellant he was under arrest for destruction of Government property. Evans was wearing khaki-colored clothes and a Forest Service badge.

There was proof by the prosecution that Tijerina then attempted a "citizen's" arrest of Evans for conspiracy against the poor; that during pushing and shoving with the crowd, Evans grabbed appellant's belt but appellant was pulled loose; and that appellant then walked to his car and pulled out a carbine and aimed it at Evans. When he was getting the rifle from the car, appellant had operated the slide to cock it. After two warnings by Evans that he would kill appellant, appellant allowed himself to be taken in custody by the State officers. Again conflicting versions of the facts were offered, appellant contending that a threatening move by another officer and his fear for a child in his car caused appellant to reach for his gun.

The jury resolved the conflicts in the proof against appellant under proper instructions which are not challenged.[3]

the venture and willfully participate in it as something he wishes to bring about and that he willfully seek by some act of his to make it succeed, and that the defendant might not be found guilty solely because of his presence and knowledge that an offense was being committed. We feel the proof was sufficient under the charge which properly followed the test of Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919.

2. The Forest Service Manual, Title 5300, Chapter 5314.1, provides in part for citizen's arrests:

"When a felony has been committed in the presence of a private person or when a felony actually has been committed and he has reasonable grounds to believe that the suspect committed it." Section 559 provides in part as follows:

"All persons employed in the Forest Service of the United States shall have authority to make arrests for the violation of the laws and regulations relating to the national forests and national parks, * * * but nothing herein contained shall be construed as preventing the arrest by any officer of the United States, without process, of any person taken in the act of violating said laws and regulations."

3. The Court instructed the jury that if an officer has reasonable grounds to believe that a person has committed a felony in the past or that he is committing one in his presence, then he has a right, with-

Probable cause for the arrest was to be evaluated on the collective information from the officers. See Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833, 835, cert. denied, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448; and Wood v. Crouse, 436 F.2d 1077 (10th Cir.), cert. denied, 402 U.S. 1010, 91 S.Ct. 2193, 29 L.Ed.2d 432. Evans had probable cause to believe the offense of aiding and abetting the destruction of Government property was being committed in his presence by appellant, or had been committed by him, based on all his information. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L. Ed. 1879. We are satisfied there was a showing of probable cause and resistance, assault and interference with Evans sufficient to sustain the conviction on count three. See United States v. Latimer, 415 F.2d 1288 (6th Cir.), and Yates v. United States, 384 F.2d 586 (5th Cir.).

■ Third, we turn to appellant's argument that testimony concerning the San Joaquin Grant was erroneously excluded. It is argued that by so doing the trial court improperly rejected appellant's proof of his intent, relying on Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465; and Collazo v. United States, 90 U.S.App.D.C. 241, 196 F.2d 573, cert. denied, 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364.

During appellant's testimony he was permitted to make a lengthy explanation of the purposes of the encampment, including the signing of a petition to be sent to the President, Congress and the Supreme Court and matters to be voted on by the group. When he made a statement that "[a]t no time has Congress or the legislature of New Mexico dissolved San Joaquin," a Government objection about getting into the land grant question was sustained. Subsequently appellant was again permitted to make a lengthy explanation of what led him to go to Gallina on June 8, including a discussion of his objections to statements of his wife on protestants and demonstrations and related matters. During testimony on his purposes in going to Gallina, a further objection was made by the Government that he was getting into the San Joaquin matter, and the objection was sustained. No offer of proof was made, and appellant was permitted to continue with the lengthy narrative of events at the Gallina sign and his shock when he saw smoke and fire.

We are satisfied that testimony on the merits and details of the San Joaquin land grant was properly excluded. Appellant's views on this matter and its merits were irrelevant. See Collazo v. United States, supra, 196 F.2d at 581. Appellant's detailed explanation of his intent and the background of the meeting and its surrounding circumstances was admitted. We conclude there was no error in the trial court's rulings excluding testimony on the land grant claim.[4]

■ Fourth, we consider appellant's argument that the trial court erred in denying his motion to quash the array and dismiss the petit jury panel. His argument is that the panel was selected by a method that systematically excluded manual laborers, wage earners, persons unable to read and write English, and the Spanish-speaking poor and Indian poor; that the array was not a fair and representative cross section of New Mexico Americans, and that the resulting panel was unlawful under the

out a warrant, to arrest the person; and that if the jury finds that the Government has failed to prove that Agent Evans had reasonable grounds to believe that a felony had been committed and that the defendant committed it, or was committing it in his presence, then the defendant had a right to resist arrest.

4. There was testimony by a surveyor that the signs were within the National Forest or administrative site and highway rights of way; and Evans said that both signs were Government property.

Jury Selection and Service Act of 1968, 28 U.S.C. A. 1861, et seq.

Prior to trial appellant filed his motions to quash the array and dismiss the petit jury panel. It alleged the unconstitutional composition of the jury by a method that systematically excluded various groups, mentioned above, and appellant has stressed the exclusion of the Spanish-speaking and Indian poor. Appellant also moved for an order for inspection of records, including questionnaires returned by prospective jurors. Prior to trial the Court held an evidentiary hearing where testimony by the Clerk on the jury selection method was taken, but denied the request to inspect the questionnaires and overruled the challenge to the array.

At the hearing the Clerk testified on the plan for random selection of juries in effect in the District of New Mexico under the 1968 statute. He described the initial selection of some 8,000 names for the master jury wheel from the voter registration list of each county in the division. The plan includes a finding that the voter registration lists represent a fair cross section of the community in the District. From the lists every thirtieth name was chosen to arrive at the 8,000 names for the master jury wheel.

Next it was explained that 5,000 names were drawn by chance from the master wheel to obtain a four-year supply of jurors for the qualified wheel. They were all sent questionnaires. Based on their responses, those that were exempt and disqualified by law were eliminated. Recommendations as to those qualifications were made by the Clerk to the Chief Judge for his approval, based on the Clerk's examination of the questionnaires. Where the prospective juror replied that he could not read, write, speak and understand the English language, the Clerk deemed him disqualified. While he testified he could not say how many such cases there were, the Clerk's impression was that from the 5,000 prospects less than 200 were disqualified on the language consideration.

Where a qualified answer was given to the language question, the determination was made from information in response to the questionnaire as a whole, usually from the amount of education shown. There were approximately 15 to 25 such qualified responses to the language question.

The 1960 census showed that about 25 or 26 percent of the population of the State had Spanish surnames. Some 32 percent of those who had served on petit jury panels drawn from the wheel in question had Spanish surnames. Twenty of the eighty-three jurors on the panel for this case had Spanish surnames. There was only one person with an Anglo name who responded that he could not meet the language test; all others so answering had Indian or Spanish surnames. The Clerk testified that there had been no arbitrary or systematic effort to exclude wage earners, public assistance recipients, persons of low income or from poor neighborhoods, the Spanish-speaking poor, or the Indian or rural poor.

In addition to the Clerk's testimony appellant offered an exhibit containing statistical tables and commentary. The exhibit was drawn from a report of a committee of the National Education Association and the New Mexico Education Association and other reports. It included data about the makeup of the population of several counties in northern New Mexico; a comparison of the educational levels attained by Anglo, Spanish-American, and Indian groups; and discussion and data relating to the dropout problem among those groups, family income and other comparisons. Appellant argued that this proof would establish that the language requirement would systematically result in exclusion of many Spanish-American and Indian prospective jurors, and other indigent groups. The exhibit was excluded.

After the evidentiary hearing the trial court found that there had been no method or calculated intent to systematically or arbitrarily exclude anyone except those excluded by statute. See 28 U.

S.C.A. § 1865. We agree that there was no showing of substantial failure to comply with the Jury Selection Act, which was appellant's burden under 28 U.S.C.A. § 1867(a). We feel there was no error in excluding the exhibit on economic and educational data. The statute provides for the disqualification of persons unable to speak English, and those unable to read, write and understand the English language with a degree of proficiency sufficient to fill out the form satisfactorily. 28 U.S.C.A. § 1865(b). The testimony showed substantial compliance with the statutory requirements and the plan, as well as the absence of ethnic considerations as a basis for exclusion. Thus, there was no showing of the racial discrimination involved in Rabinowitz v. United States, 366 F.2d 34 (5th Cir.), and Mobley v. United States, 379 F.2d 768 (5th Cir.). We are persuaded that the finding of the trial court is amply supported by the record and that denial of the motion was proper.

In connection with the jury selection issue appellant has urged that there was error in denying his request for examination of the questionnaires. The request was made in appellant's motion and renewed during the evidentiary hearing, and denied by the trial court. The Government argues that the ruling was a proper exercise of the trial court's discretion. Just prior to the ruling counsel for appellant stated to the Court that it might order or allow counsel to examine the questionnaires and that this was a discretion the Court could exercise. In the context in which the request was made, we conclude that there was no abuse of discretion and no error in the denial of the request.[5] We feel that neither this ruling nor others complained of in connection with the jury selection issue were reversible error.

In sum we conclude that the record supports the convictions and that there was no reversible error.

Affirmed.

5. The Government argues that it was a matter of discretion whether the questionnaires were made available to appellant, relying on Bary v. United States, 248 F.2d 201 (10th Cir.), cert. denied, 359 U.S. 934, 79 S.Ct. 649, 3 L.Ed.2d 635; and Windom v. United States, 260 F.2d 384 (10th Cir.). We note, however, that the 1968 statute appears to provide for inspection, reproduction and copying of such records for the preparation and presentation of a motion challenging the array. See 28 U.S.C.A. § 1867(f). While the new statute appears to grant such inspection as a matter of right, the matter was not thus presented in the trial court. Appellant asserted no claim of such a statutory right and instead stated to the trial court that the matter was discretionary. Therefore no claim of a statutory right to examine the questionnaires was presented to the trial court and that question is not before us.