UNITED STATES of America,
Plaintiff-Appellee,

v.

H. Bradford AARONS,
Defendant-Appellant.

No. 82–1396.

United States Court of Appeals,
Sixth Circuit.

Argued May 26, 1983.

Decided Oct. 5, 1983.

Abraham Singer, argued, Shapack, Singer & McCullough, Troy, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., F. William Soisson, Asst. U.S. Atty., argued, Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Circuit Judge,

ENGEL, Circuit Judge, and NEESE,* Senior District Judge.

PER CURIAM.

■ H. Bradford Aarons appeals his conviction, following a lengthy jury trial in the Eastern District of Michigan, on a single count of making, or causing to be made, a false statement to an agency of the United States, 18 U.S.C. §§ 1001 and 2. Finding the evidence insufficient to support the conviction, we reverse.[1]

Production Forming, Inc. (PFI) borrowed $385,000 from the Madison National Bank of Detroit, Michigan (Bank). The lender and the lendee applied to the Small Business Administration (SBA) for the usual guaranty it may make of such loans. A part of that application was a document required by the SBA, known as a "settlement sheet," representing how the proceeds of the loan had been distributed. *United States v. Grugette,* 678 F.2d 600, 602 (5th Cir.1982); *United States v. Luxenberg,* 374 F.2d 241 (6th Cir.1967).

The settlement sheet here contained statements representing to the SBA that the proceeds of the loan had been disbursed by the Bank precisely in accordance with earlier representations set forth in earlier documents supporting the application for the loan guaranty. The statements in the settlement sheet regarding disbursement were false, in that the Bank had applied $113,000 of the proceeds to outstanding loans made by the Bank to Aarons, Bruce E. Neagley, of Keuther Metal Forming, Inc. (KMF), and to Aarons and Associates, Inc. (AAI). Aarons was the chairman of the board of directors of PFI, and Neagley was its president. PFI was the principal creditor of KMF, and Aarons and Neagley were the principal stockholders of AAI, which owed each of them money.

The false representations were made jointly by Neagley, by Roger Fosth, the vice-president of PFI, and by Dean Busard, a vice-president of the Bank, on information selected and inserted on the SBA form by Busard. Busard distributed all proceeds of the loan. Neither Busard nor Fosth were charged, but Aarons, Neagley, and the Bank were indicted along with Charles R. Betteley, its president, and Frank Parynik, chief of the finance division of the SBA office involved.

Midway in the trial, Mr. Neagley changed his plea to guilty on two counts of the indictment.

Appellant Aarons was acquitted on all charges against him except that contained in count three of the indictment. Count three charged Aarons with willfully and knowingly making or causing to be made a false statement to the SBA in violation of 18 U.S.C. §§ 1001 and 2. Aarons claims on this appeal that his conviction was based on insufficient evidence and that the prosecution did not prove every element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Initially, we note the concession by the prosecution that Aarons could not have been found guilty of personally making the false statement involved, or of aiding or abetting its making, *see* 18 U.S.C. § 2(a).[2] Instead, the government urges us to sustain Aarons' conviction on the theory that Aarons "caused" the false statement to be made, thereby rendering him punishable as a principal under 18 U.S.C. § 2(b).[3] We

---

* The Honorable C.G. Neese, Senior Judge, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Where the sufficiency of the evidence is properly before us, we consider that issue first because it is determinative of whether the appellant may be retried. *United States v. Orrico,* 599 F.2d 113, 116 (6th Cir.1979); *see Delk v. Anderson,* 665 F.2d 90, 93, n. 1 (6th Cir.1981). This issue being dispositive of the appeal, we do not consider the other issues raised.

2. "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

3. "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b).

limit, therefore, our discussion to whether or not the evidence was sufficient to sustain the conviction under § 2(b).

Aarons could be convicted here only if the prosecution proved that Busard, Neagley or Fosth committed the predicate felony proscribed by 18 U.S.C. § 1001. *United States v. Hoffa,* 349 F.2d 20, 40 (6th Cir.1965), *aff'd,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Title 18 U.S.C. § 1001 makes it unlawful to knowingly and willfully make any false statements or representations in any matter within the jurisdiction of any department or agency of the United States. *United States v. Beacon Brass Co.,* 344 U.S. 43, 45, 73 S.Ct. 77, 78, 97 L.Ed. 61 (1952). It was the congressional intent to protect governmental departments and agencies from the perversion which might result from the deceptive practices described in this statute. *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941).

Aarons, Neagley, Fosth and Busard had agreed and knew before the settlement sheet was executed that the proceeds of the loan would be disbursed by Busard as they were; indeed, Neagley withheld his agreement to such disbursements in that manner until the Bank lent PFI an additional $65,000 for working-capital. Busard maintained throughout the transaction that, as such agreement was reached by all the parties thereto "at arm's length," the distribution of the proceeds of the loan was lawful.

■ The elements of the crime denounced as unlawful by the predicate statute are: (1) the making of a statement; (2) the falsity of such statement; (3) knowledge of the falsity of the statement; (4) relevance of such statement to the function of a federal department or agency; (5) that the false statement was material. *United States v. Fitzgibbon,* 619 F.2d 874, 879 (10th Cir.1980). A review of the evidence reveals that Busard, Neagley and Fosth violated the "making" clause of 18 U.S.C. § 1001.

■ The government contends that Aarons' repeated failure to disclose to the SBA his knowledge that the Bank had distributed a substantial portion of the proceeds of the loan in a manner contrary to that specified in the loan application documents renders him culpable under 18 U.S.C. §§ 1001 and 2. We cannot agree. In the absence of overt acts by Aarons relating to the making of the false representations by Busard, Neagley and Fosth to the SBA, his mere failure to "speak up" to the SBA is insufficient to punish him as a principal under 18 U.S.C. § 1001. A different result would come dangerously close to trenching upon a person's right against self-incrimination under the Fifth Amendment. *See United States v. London,* 550 F.2d 206, 212 (5th Cir.1977).

■ At oral argument, the government urged us to affirm Aarons' conviction on the grounds that the jury might have reasonably inferred from the evidence that Aarons foresaw that someone would conceal from the SBA the maldistribution of the loan the SBA had guaranteed, and that this somehow constitutes a violation of 18 U.S.C. § 2. *Cf. U.S. v. Beck,* 615 F.2d 441 (7th Cir.1980). That inference cannot support a conviction under the cited statute. *See Logsdon v. United States,* 253 F.2d 12, 16 (6th Cir.1958). ("It is not enough that the appellant may have willfully created the occasion or the opportunity for the cashier's [*i.e.,* the principal's] misapplication of the funds, even though the appellant [causer] may have foreseen these consequences of his own misconduct.")

This is not a situation analogous to that in *United States v. Murph,* 707 F.2d 895 (6th Cir.1983), where the appellant willfully caused another person to submit the Internal Revenue Service a tax return which fraudulently claimed an entitlement to a refund. There, appellant had sold his right to receive the proceeds of his supposed refund to a "tax return discounter." Therein, we said:

> The defendant knew when he sold the return to the discounter that the discounter was buying it for the purpose of presenting it to the government for a refund. This further [overt] act on behalf of the discounter was clearly understood and foreseen by the defendant and thus the defendant "caused" the return

to be presented within the meaning of the Act. *Compare Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954).

Here, the evidence did not reflect that Aarons had understood or foreseen that the false statement would be made and submitted to the SBA.

In its reliance on *Beck v. United States,* 615 F.2d 441 (7th Cir.1980), the government has overlooked the basic statement of law therein: " '[T]here must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that [the] defendant committed an overt act designed to aid in the success of the venture.' " *Beck,* 615 F.2d at 449, citing *United States v. Longoria,* 569 F.2d 422, 425 (5th Cir.1978). Furthermore, "there must be evidence to establish that the defendant shared in the criminal intent of the principal." 615 F.2d at 448–49.

In *Beck,* defendant's objective was to illegally secure the exportation of munitions from the United States to South Africa; this plan could succeed only if the required export documents falsely declared the packaged arms and ammunition to be legitimate export articles. In the instant case, the objective was to obtain SBA guaranty of a loan arranged between PFI and the Bank. Falsifying the representations on the settlement sheet was unnecessary to the success of the enterprise because the loan had been guaranteed prior to the submission of the settlement sheet. In *Beck,* defendant's many overt acts contributed significantly to the making and concealing of the false statements on the export documents, while here Aarons merely acquiesced in the making of false statements by Busard, Neagley and Fosth. "Proof of mere negative acquiescence will not suffice." *United States v. Longoria,* 569 F.2d 422, 425 (5th Cir.1978). A person is not guilty under 18 U.S.C. § 2 "unless there is some sort of active proceeding on his part; he must incite, or procure, or encourage the criminal act, or assist or enable it to be done, or engage or counsel, or command the principal[s] to do it." *Mor-*

ei *v. United States,* 127 F.2d 827, 830–31 (6th Cir.1942).

The government also argues that Aarons' role in preparing the original loan application and his part in revising the various subsequent applications constitutes conduct infringing 18 U.S.C. § 2. Even accepting this argument, the evidence offered at trial does not support the government's view of Aarons' role in the illegal scheme. It is undisputed that PFO Financial Corporation—a concern specializing in preparing loan applications for eventual submission to SBA—was hired by Aarons to prepare the first loan application. Neagley's testimony at trial indicated that the second and third applications were also prepared without Aarons' participation:[4]

Q. [H]ow did it come-about that [the second proposal, exhibit no.] A–3 was prepared?

\* \* \* \* \* \*

A. Mr. Aarons and myself [sic]—

\* \* \* \* \* \*

A. —had some discussions with Dean Busard ... and indicated to Mr. Busard the $550,000 loan [proposed in the package prepared by the professionals]—we could not find any participating-banks to participate in this loan. Mr. Busard then suggested ... that we attempt to get a $385,000-loan ....

Q. And who put that package together?

A. Mr. Busard and myself.

Q. [I]s that [exhibit no. A–9] the third loan-proposal that was prepared?

A. Yes, it is.

Q. And who prepared that one?

A. That was prepared by Mr. Busard and myself [sic].

\* \* \* \* \* \*

Q. [W]here did the figures come-from that was [sic: were] included on the debt-schedule [of exhibit no. A–9]?

A. Most ... came from ... exhibit A–3.

Q. Was A–9 submitted to the SBA?

---

**4.** The third application was approved by the

SBA.

A. Yes, it was.

Busard corroborated and supplemented Neagley's testimony:

Q. And that's [exhibit no. A–39] the settlement-sheet that was prepared, is it not?

A. That is right.

Q. You prepared that sheet?

A. That's correct.

\* \* \* \* \* \*

Q. [Y]ou prepared the information?

A. Yes.

\* \* \* \* \* \*

Q. [D]id you feel that all the money you had disbursed was disbursed legally and properly?

A. Yes, I d[id].

The trial record is simply devoid of any evidence that Aarons committed an overt act which was designed to aid Busard, Neagley and Fosth in making false representations to the SBA.

Our duty is clear: we "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision . . . . Our task [is] to decide whether a reasonable mind might find guilt beyond a reasonable doubt." *United States v. Winston,* 687 F.2d 832, 834 (6th Cir.1982). We are hard put to find sufficient evidence in the trial record that Aarons associated himself with the criminal venture involved here—*i.e.,* the making by Busard, Neagley and Fosth of false statements to the SBA concerning the true manner in which the Bank disbursed $113,000 of the proceeds from the $385,000 loan it had made to PFI, a portion of which the SBA guaranteed.

It is true that the appellant knew exactly what the distribution of the proceeds of the loan had been and would not have desired that fact to become known to the SBA. Aarons had a stake or interest in the outcome of the perpetrators' crime, and this was a factor appropriate for consideration on the issue of his guilt or innocence. *Winston,* 687 F.2d at 835. It is also true that Aarons was present when the perpetrators committed the crime charged. Even if he

knew, however, that the perpetrators were committing a crime—knowledge which he denied under oath—this is generally not enough to constitute a violation of 18 U.S.C. § 2. *United States v. Bryant,* 461 F.2d 912, 913, 920 (6th Cir.1972); *accord, United States v. Milby,* 400 F.2d 702, 707 (6th Cir. 1968); *see U.S. v. Williams,* 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1954).

Although Aarons was a member of the board of directors of the Bank which elected Busard as its officer, and was chairman of the board of PFI, of which Neagley and Fosth were officers, the record does not suggest that these men acted at Aarons' direction. Busard appeared diligent in collecting much of the $150,000 which Aarons then owed the Bank. Neagley was a certified public accountant and possessed knowledge concerning Busard's misconstruction of the law. Fosth testified:

Q. [W]hat was the surprise [for] you [from Mr. Busard's revelation that personal loans would be paid-on from the proceeds of the SBA-loan]?

A. That monies from the SBA loan were being paid-off—loans of Mr. Aarons and Mr. Neagley.

\* \* \* \* \* \*

Q. And, did you have a discussion after that with Mr. Busard?

A. I asked him: I said, You know what is—I don't understand what is going-on here. He said, Well, that was part of the deal of putting the loan-package together, of this size: Mr. Aarons' [and] Mr. Neagley's notes could be paid-off from the proceeds of the loan. I said, That's illegal—you can't do that; every piece of literature you read from SBA says you can't pay-off personal debt from—

\* \* \* \* \* \*

Q. How did you become familiar [with restrictive qualifications on SBA-loans]?

A. I had my own business; read; applied for SBA loans.

\* \* \* \* \* \*

Q. [W]hat were you familiar with [about SBA provisions regarding repayment of certain debts]?

A. That any proceeds from SBA loans could not be used for paying-off personal debts.

Q. [D]id you say anything to Mr. Busard about that?

A. I brought the fact up to him.

Q. What was his response?

A. His response: Arm's-length transaction, and there is nothing illegal about it.

Aarons was not responsible for the criminality of Busard in his employment with the Bank "unless he aided, abetted or adduced [Busard] to so act." *Logsden v. United States,* 253 F.2d at 14. There is no evidence that Aarons assisted the perpetrators of this crime, however. *Cf. U.S. v. Williams, supra,* 341 U.S. at 58 n. 4, 71 S.Ct. at 595 n. 4; *Grimes v. United States,* 379 F.2d 791, 795 (5th Cir.1967) (" [T]he government had to show conduct on his part amounting to counselling or other assistance in the prohibited activity."), *cert. denied,* 389 U.S. 846, 88 S.Ct. 104, 19 L.Ed.2d 113 (1967). There was no proof offered by the government "of 'some affirmative participation which at least encourage[d] the perpetrator[s].' " *United States v. Crow Dog,* 532 F.2d 1182, 1195 (8th Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977). Finally, there is no evidence of specific intent on the part of Aarons to violate 18 U.S.C. §§ 1001 and 2.

Accordingly, the judgment of the appellant's conviction is REVERSED.