805 F.2d 1037
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sally RANK (Nos. 84-1257, 85-1249), John J. Brown (No.
84-1870), Defendants- Appellants.
 Nos. 84-1257/1870, 85-1249.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1986.
 
 Before KEITH and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants-appellants Sally Rank and John J. Brown appeal from their convictions for aiding and abetting mail fraud in violation of 18 U.S.C. Secs. 2, 1341 (1982). On appeal, Rank contends that the district court erred in permitting the introduction of other act evidence and in denying her motions for judgment of acquittal and for a new trial, and that her second trial violated the Double Jeopardy Clause of the Fifth Amendment. Brown argues that the district court erroneously denied his motion for judgment of acquittal, abridged his Sixth Amendment right to compulsory process, and should have granted his motion for severance. After carefully reviewing each issue, we affirm Rank's convictions on all counts, but reverse the district court's judgment of conviction against Brown and remand his case with orders to enter a judgment of acquittal.
 
 
 2
 The evidence, viewed in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80 (1942), demonstrated the existence of a scheme to defraud insurance companies. Three central figures in the scheme, Gerrick Anderson, Herschel Rivers, and Sylvester Marshall, or persons under their direction, using their own names and aliases, would stage automobile accidents, report automobile accidents which had never occurred, and seek treatment for nonexistent injuries from real accidents in which they had not been involved. These "accident victims" would be examined and treated at the Boulevard Family Clinic ("Clinic"), owned by Dr. Brown, at which Rank was employed. From the Clinic the "victim" would obtain an Attending Physician's Report ("APR") detailing the treatment received for the fake injuries and often listing treatment that was never rendered. The "victim" would then mail the APR, an Application for Benefits, and a Wage and Salary Verification form, all of which are necessary to obtain benefits under the Michigan no-fault insurance law, see Mich.Comp.Laws Ann. Sec. 500.3158 (West 1983), to the insurer. On the wage form the "victim" would list a fictitious employer, or an existing employer for whom he or she did not work, and fraudulent wage and length of disability information. By this scheme, the "victims" were able to fraudulently obtain wage benefits and the clinics received compensation for treatment of fake injuries or for medical services which were never rendered.[1]
 
 
 3
 A thirty-nine count indictment was returned against Brown, Rank, and ten co-defendants, charging each with aiding and abetting mail fraud in connection with numerous "accidents." Brown and Rank were charged together in twenty-five counts and Rank was named in one additional count.[2] A jury found both Brown and Rank not guilty of counts 5-8, 14, 15, 37, and 38, and Rank not guilty of count 10, but was unable to unanimously agree on the remaining counts against each. The government dismissed counts 9, 16, and 19-21. A mistrial was declared on the remaining counts, but the trial court subsequently ordered judgments of acquittal for Brown and Rank on counts 22-26 and on count 10 for Brown.
 
 
 4
 Brown and Rank were each retried on counts 11, 12, 17, 18, 35, and 36, and Rank was also retried on count 39.[3] They were each found guilty on all counts. Brown received six concurrent four year sentences, and Rank was sentenced to concurrent terms of six months imprisonment and three years probation on each count. This appeal ensued.
 
 Rank's Appeal
 
 5
 Rank's primary contention on appeal[4] is that numerous "other acts" were introduced as evidence against her in contravention of Rules 403 and 404(b) of the Federal Rules of Evidence. We disagree. This Court has addressed the propriety of introducing other act evidence on numerous occasions. Before admitting other act evidence, the district court must determine that the evidence is admissible for a proper purpose and that the probative value of the evidence outweighs its potential prejudicial effects. E.g., United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir.1985); United States v. Dabish, 708 F.2d 240, 242 (6th Cir.1983) (per curiam). In addition, the evidence must be substantially similar and reasonably near in time to the offenses for which the defendant is being tried. United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985); Ismail, 756 F.2d at 1259; United States v. Largent, 545 F.2d 1039, 1043 (6th Cir.1976), cert. denied, 429 U.S. 1098 (1977). Regarding the application of Rule 403, we have consistently held that the district court has great discretion in determining whether the probative value of evidence is substantially outweighed by its unfair prejudice. United States v. Metzger, 778 F.2d 1195, 1206 (6th Cir.1985), cert. denied, --- S.Ct. ---- (1986); Ismail, 756 F.2d at 1259; United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979).
 
 
 6
 One proper purpose for the admission of evidence under Rule 404(b) is to show a common scheme or plan. Blankenship, 775 F.2d at 739; Ismail, 756 F.2d at 1259; Largent, 545 F.2d at 1043 (evidence admissible which "tended to show a consistent pattern of conduct over the entire time"); United States v. Faulkner, 538 F.2d 724, 729 (6th Cir.) (evidence showed defendant "was acting pursuant to a plan or pattern"), cert. denied, 429 U.S. 1023 (1976). We conclude that the other act evidence in the instant case was admissible under Rule 404(b) as probative of the existence of a plan or scheme to defraud the insurance companies, a necessary element for a violation of the mail fraud statute, 18 U.S.C. Sec. 1341 (1982). See Pereira v. United States, 347 U.S. 1, 8 (1954); Bender v. Southland Corp., 749 F.2d 1205, 1215-16 (6th Cir.1984). Specifically, those pieces of other act evidence to which Rank most strongly objects were admissible for this purpose. Although no evidence linked Rank to the treatment of Sylvester Marshall by Dr. Brown in 1974 and 1975 or the preparation by Brown of a statement for Marshall to send to his insurance company which listed more treatment than Marshall actually received, evidence of the preparation of this statement of treatment was probative of a plan by the Clinic to overbill for services not rendered. Similarly, evidence of an inter-office memo from an unknown source to an unknown party directing that treatment for Hershel Rivers be back-dated in the Clinic records was probative of a plan or scheme to defraud.[5]
 
 
 7
 We also conclude that the evidence was substantially similar to the acts alleged in the indictment. Cf. Ismail, 756 F.2d at 1259-60. With minor variations, each other act involved treatment at the Clinic following a car accident, real or fictitious, by "victims" who made repeated visits to the Clinic, had numerous contacts with Rank, used one or more aliases, and often obtained APRs listing treatments never rendered. Furthermore, each of the other acts was sufficiently near in time to the indictment acts to be admissible under Rule 404(b). Cf. id. at 1260 (admitting prior acts occurring two to four years before the indictment). Although Marshall's visits to the Clinic in 1974 and 1975 were several years before the first act charged against Rank for conduct in 1979, "[t]here is no absolute maximum number of years that may separate a prior act and the offense charged." Id. at 1260 (citing cases admitting evidence of crimes up to thirteen years before indictment).
 
 
 8
 Finally, we find that the district court did not abuse its broad discretion under Rule 403. Viewed "in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect," Brady, 595 F.2d at 361, the evidence was probative of both a plan or scheme to defraud and Rank's intent, knowledge, and absence of mistake regarding the "victims" and the Clinic's scheme to defraud. And, Rank has not demonstrated the specific prejudice that flowed from admission of this evidence other than the prejudice inherent in the admission of any other act evidence.
 
 
 9
 In light of the foregoing,[6] we hold that the district court's judgment of conviction against Rank must be affirmed.
 
 Brown's Appeal
 
 10
 Brown contends, inter alia, that the district court erred in denying his motion for judgment of acquittal. Our task on an appeal raising this issue is to determine whether "the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt." United States v. Holloway, 731 F.2d 378, 381 (6th Cir.1984). Finding no evidence upon which a rational jury could have concluded that Brown participated in the mail fraud, we are constrained to hold that the trial court should have granted Brown's motion for judgment of acquittal.[7]
 
 
 11
 The government could have established Brown's guilt in the instant case in two ways. First, it could have shown that Brown aided, abetted, counselled, commanded, induced, or procured the commission of the mail fraud. 18 U.S.C. Sec. 2(a) (1982). However, "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " Nye & Nissen v. United States, 336 U.S. 613, 619 (1949) (quoting United States v. Peoni, 100 F.2d 401, 402 (2d Cir.1938)); United States v. Zackert, 783 F.2d 677, 678 (6th Cir.1986) (per curiam); United States v. Beck, 615 F.2d 441, 448 (7th Cir.1980) ("The standard has two prongs--association and participation."). Alternatively, the government could have proved that Brown willfully caused the fraudulent mailings in question. 18 U.S.C. Secs. 2(b), 1341 (1982); Pereria, 347 U.S. at 8-9; see United States v. Murph, 707 F.2d 895, 896 (6th Cir.) (per curiam), cert. denied, 464 U.S. 844 (1983).
 
 
 12
 Initially, we note that the record is devoid of any direct evidence showing that Brown either aided and abetted or caused the mailing of any fraudulent document. None of the co-defendant "victims" at the second trial testified to having been treated by Brown during the indictment period. In fact, the evidence established that Brown was in the Caribbean attending medical school during most of the time relating to the seven counts upon which he was retried. Despite handwriting analysis, the government produced no fraudulent or erroneous document pertaining to the indictment period which had been prepared or signed by Brown. Instead, the evidence showed that Brown's employee of many years, Rank, who had the general authority to sign Brown's name, affixed his signature to the fraudulent APRs even though the patients had been treated by various Clinic doctors and staff personnel. No evidence established that Brown had counselled, commanded, or authorized Rank to sign his name to these particular APRs.
 
 
 13
 To shore up this lack of direct evidence, the government grounded its allegations of Brown's culpability on three types of circumstantial evidence. First, the government made much of the fact that in 1975 Brown prepared an erroneous statement of treatment for Sylvester Marshall to submit to his insurance company. While this evidence was admissible against Brown to show a scheme or plan to defraud or to circumstantially establish Brown's mens rea to commit the fraudulent acts alleged in the indictment, it is patently improper to use this evidence as proof that Brown committed similar wrongful acts during the indictment period. Fed.R.Evid. 404(b) (other act evidence inadmissible to show defendant "acted in conformity therewith"); Blankenship, 775 F.2d at 739 (same); Ismail, 756 F.2d at 1258 (same).
 
 
 14
 Next, the government alleged that Brown's position as owner and president of the Clinic and his frequent telephone contacts with it from the Caribbean demonstrated sufficient control of the Clinic's operation to infer that Brown had participated in the criminal acts alleged against him. This evidence establishes at most, however, that Brown knowingly acquiesced in the fraudulent scheme being perpetrated at the Clinic, not that he participated in the fraud or caused the fraudulent mailings, and is insufficient to sustain Brown's convictions. United States v. Aarons, 718 F.2d 188, 190-91 (6th Cir.1983) (per curiam); see also United States v. Elkins, 732 F.2d 1280, 1287 (6th Cir.1984) (knowledge of criminal conduct insufficient); United States v. Winston, 687 F.2d 832, 835 (6th Cir.1982) (presence at scene and guilty knowledge of crime insufficient); Beck, 615 F.2d at 449 (defendant must have engaged in some affirmative conduct or overt act designed to aid in the success of the venture). We decline to adopt the government's theory, akin to a respondeat superior basis for criminal liability, that if Brown knew of the criminal activity, was in a position to stop it, and failed to do so, he was thereby guilty of aiding and abetting, or causing, the fraudulent conduct.
 
 
 15
 Finally, the government argues that Brown's guilt can be inferred from the fact that the fraudulently obtained medical reimbursement checks were deposited into the Clinic's bank account over which Brown had control. Although Brown strenuously contested the government's assertion that he had derived pecuniary gain from the fraudulent scheme, we need not resolve this matter on appeal. Even assuming that Brown knowingly accepted fraudulently obtained benefits, this does not establish Brown's participation in the fraud. There was no evidence that the fraudulently obtained funds were treated any differently than remittances legitimately received by the Clinic or were diverted from the normal course of business. Therefore, acceptance of the benefits of the scheme is merely a form of knowing acquiescence insufficient to maintain a conviction under 18 U.S.C. Secs. 2, 1341 (1982). See Aarons, 718 F.2d at 192-93. Although having a stake or interest in the outcome of a crime is a factor in determining a criminal defendant's guilt, id. at 192, we do not believe that, without more, it is a sufficient basis to establish the participation requisite for a conviction as an aider and abetter.
 
 
 16
 We are not unmindful that "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 106 S.Ct. 1991 (1986). No rational jury could have found that Brown participated in the scheme or caused the fraudulent mailings, however, without either drawing unwarranted inferences from Brown's "control" of the Clinic or his retention of fraudulently obtained funds, cf. Aarons, 718 F.2d at 190, 192, or improperly concluding that Brown acted in conformity with criminal propensities established by the other act evidence.[8] Consequently, we hold that the district court erred in denying Brown's motion for judgment of acquittal.
 
 
 17
 In light of the foregoing, we AFFIRM the district court's judgment of conviction against Rank, but REVERSE Brown's convictions and REMAND his case to the district court with directions to enter a judgment of acquittal in his favor.
 
 
 18
 BOGGS, Circuit Judge, concurring in part and dissenting in part.
 
 
 19
 I concur in all of the Court's opinion in this case with the exception of the decision to reverse Dr. Brown's conviction and direct of judgment of acquittal in his favor.
 
 
 20
 The crux of my disagreement is with the discussion at pages 11 and 12, where the opinion states that it is insufficient to sustain Brown's conviction that he "knowingly acquiesced in the fraudulent scheme being perpetrated at the clinic...."
 
 
 21
 While the Court is correct that mere knowledge of or acquiescence in a fraudulent scheme or other crime is not itself criminal as aiding and abetting, none of the cases cited concern a situation where the fraud is being perpetrated under the general authority of and with means provided by the defendant, and which indeed could not succeed without his continuing acquiescence. In particular, the Aarons case involves merely passive acquiescence in a scheme carried on by others, with means within their disposal and control.
 
 
 22
 As the Court's opinion discusses, there was ample evidence that this scheme could not have been carried out successfully without the use of Brown's signature. Indeed, defendant Rank had general authority to sign Brown's name. There was also evidence that Rank had for years had a practice of signing Brown's name to fraudulent applications, and that Brown fully knew of and concurred in this practice, though the Court is correct that there is no evidence that Brown commanded the signing of his name to these particular applications. There was also testimony that Brown was "the administrator" of the Grand Boulevard Medical Clinic, and that though his absence from the country made it difficult, "he spent a lot of time on the phone" in that role. Indeed, the clinic could not have billed at all without Brown's permitting the use of his (by now invalid) medical license.
 
 
 23
 Coupled with the legitimately admitted evidence of a common scheme or plan, the continued control of the clinic, general authorization of Rank's signature, and receipt of the benefits of the fraud constitute sufficient evidence to allow a reasonable jury to infer the type of "overt act designed to aid in the success of the venture" required by United States v. Beck, 615 F.2d 441, 449 (7th Cir.1980), quoting United States v. Longoria, 569 F.2d 422, 425 (5th Cir.1978).
 
 
 24
 I respectfully dissent.
 
 
 
 [1]
 The evidence also established that on several occasions the "victim" participants in the scheme suffered real injuries from real accidents. Nonetheless, the Clinic would be favorably compensated by listing more treatment on the APRs than was actually rendered and the victim would fraudulently receive wage benefits by claiming employment with companies, real or fictitious, for which they did not work
 
 
 [2]
 Counts 5-12 and 14-18 all stemmed from a May 2, 1979 "accident" and charged Brown, Rank and six co-defendants including Anderson, Rivers, and Bernice Wordlaw with aiding and abetting mail fraud. Counts 19-21 named Brown, Rank and one co-defendant in connection with a September 21, 1979 "accident." The same configuration applied in counts 22-23 involving a December 13, 1979 "accident." Both appellants and two co-defendants were named in counts 24-26 in connection with a January 2, 1980 "accident." A January 28, 1980 "accident" resulted in counts 35 and 36 against Brown, Rank, and Roy Boyd. Finally, Rank and Anderson were named in count 39 in connection with a real accident which occurred on March 31, 1981
 
 
 [3]
 Counts 11 and 12 concerned fraudulently obtained medical compensation checks issued to the Clinic for treatment rendered to Anderson and Rivers, respectively. Counts 17 and 18 concerned the mailing of fraudulent Application for Benefits and Wage and Salary Verification forms for Wordlaw. Similarly, counts 35 and 36 involved fraudulent Application for Benefits and Wage and Salary Verification forms for Boyd. Rank's retrial on count 39 involved a medical compensation check issued to the Clinic in connection with the treatment of Anderson following his real accident on March 31, 1981
 
 
 [4]
 As a threshhold question, we considered Rank's contention that her acquittal on some counts at the first trial barred her retrial. See Ashe v. Swenson, 397 U.S. 436 (1970). The mail fraud statute, 18 U.S.C. Sec. 1341 (1982), to which the aiding and abetting statute, 18 U.S.C. Sec. 2 (1982), appends, requires for conviction both a scheme or artifice to defraud and a mailing for the purpose of executing the scheme. Pereira v. United States, 347 U.S. 1, 8 (1954); Bender v. Southland Corp., 749 F.2d 1205, 1215-16 (6th Cir.1984). Rank was charged with separate offenses involving different "victims" alleging different "accidents" on different dates and, most importantly, involving different mailings, with each count requiring separate proofs from all the others. Cf. Blockburger v. United States, 284 U.S. 299, 301-04 (1932). The jury acquitted Rank on some counts, and the court dismissed several others, only upon a finding that the proof had not established Rank's intent or participation in the scheme with respect to the particular mailing that was the subject of the count under consideration. Consequently, Rank has failed to establish that the issues she wished to foreclose from consideration were "necessarily" decided in her favor by the first jury, United States v. Cala, 521 F.2d 605, 608 (2d Cir.1975), in a manner contemplated by Ashe for the invocation of collateral estoppel
 
 
 [5]
 In addition to establishing a plan or scheme to defraud, much of the other act evidence also served to circumstantially establish Rank's intent, knowledge, or absence of mistake regarding the "victims" scheme to fraudulently obtain wage benefits by showing that several of the "victims" had been treated by Rank for injuries, real or phantom, sometimes under aliases, and were occasionally listed in the Clinic's patient files as having been treated under two names on the same date
 
 
 [6]
 We hold Rank's other two contentions raised on appeal to be without merit. First, the district court did not err in denying Rank's motion for judgment of acquittal under Fed.R.Crim.P. 29. Viewing "the evidence and all reasonable inferences in the light most favorable to the government," United States v. Holloway, 731 F.2d 378, 381 (6th Cir.1984), the evidence was "such that a reasonable mind might fairly find guilt beyond a reasonable doubt." Id. It was established at trial that Gerrick Anderson had been treated at the Clinic for several years prior to May 2, 1979, yet the APR for this "accident" erroneously stated that Anderson had never suffered from a same or similar medical condition. In addition, Anderson was treated under two names in 1979, and on six occasions under both names on the same day. Moreover, Anderson testified to receiving only half the treatments listed on the APRs for the May 2, 1979 "accident" and his real accident in 1981. This evidence was sufficient to support Rank's convictions on counts 11 and 39. The jury was also justified in determining that Rank knew Hershel Rivers by his real name prior to May 2, 1979, yet utilized the alias "Thomas Burgess" on the APR, erroneously stated that "Burgess" had not previously had a similar condition, and credited Rivers with treatment under both names on the same day in aiding and abetting mail fraud under count 12. Wordlaw's trial testimony, that she was known to Rank by her real name and two aliases and underwent treatment at the Clinic under two names at the same time in 1980, supported Rank's convictions on counts 17 and 18. Finally, Roy Boyd's testimony, that he visited the Clinic only two or three times following his January 28, 1980 "accident," rather than the ten times claimed by the Clinic, and had not received the prescription drugs or collar listed on the bill, coupled with the facts that Boyd listed the same fictitious company claimed as Anderson's and Rivers' employer and had been introduced to the Clinic by Anderson, was sufficient for a rational jury to convict Rank of counts 35 and 36
 Second, Rank's trial counsel's discovery during pre-sentence investigation that Rank had a history of treatment for psychological disorders and suffered from a passive dependent personality disorder did not warrant granting a new trial based on newly discovered evidence under Fed.R.Crim.P. 33. To warrant a new trial based on newly discovered evidence, a defendant must demonstrate, at the least, "that the evidence ... was discovered only after trial...." United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982), cert. denied, 461 U.S. 945 (1983). This evidence was unquestionably known by Rank herself prior to trial, and we decline to permit Rank to capitalize on her failure to disclose such information to her attorney. See United States v. Slutsky, 514 F.2d 1222, 1225 (2d Cir.1975).
 
 
 [7]
 Given our holding in this regard, we express no opinion on Brown's other claims that the district court abridged his Sixth Amendment right to compulsory process and erred in denying his motion for severance
 
 
 [8]
 We express no opinion concerning the possibility of charging Brown under other criminal statutes, but note that Brown was not prosecuted for conspiring to commit mail fraud under 18 U.S.C. Secs. 371, 1341 (1982), which, if a conspiracy had been established, would have required only slight evidence to connect Brown to it, United States v. Chambers, 382 F.2d 910, 913 (6th Cir.1967), or under such laws as 18 U.S.C. Sec. 2314 (1982), criminalizing the interstate transportation of money obtained by fraud, or the Michigan statute which makes it a crime if a person "buys, receives, possesses, conceals, or aids in the concealment of stolen, embezzled, or converted money ... knowing the money ... to be stolen, embezzled, or converted...." Mich.Comp.Laws Ann. Sec. 750.535(1) (West.Supp.1986)